IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

MARCO GUIRLANDO                                                                          PLAINTIFF

v.                                              Civil No. 1:21-cv-01013

UNION COUNTY JAI; CAPTAIN RICHARD
MITCHAM; LIEUTENANT BILLY PERRY;
LIEUTENANT JOHN WARD; LIEUTENANT
PAUL KUGLER; NURSE SHERIE RICE; DR.
DEANNA HOPSON; CORRECTIONAL OFFICER
TUBBS; CORRECTIONAL OFFICER KEVIN PENDLETON;
SHERIFF RICKY ROBERTS, Union County, Arkansas;
CITY TELE COIN; and JERRY JUNEAU, Chief Operating
Officer City Tele Coin                                                                   DEFENDANTS

## REPORT AND RECOMMENDATION

This is a civil rights action filed by Plaintiff Marco Guirlando pursuant to 42 U.S.C. § 1983. Plaintiff proceeds *pro se* and *in forma pauperis*. Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3), the Honorable Susan O. Hickey, Chief United States District Judge, referred this case to the undersigned for the purpose of making a Report and Recommendation.

The case is before the Court for preservice screening under the provisions of 28 U.S.C. § 1915A(a). Pursuant to § 1915A(a), the Court has the obligation to screen any complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.

## I. PROCEDURAL HISTORY

Plaintiff is currently an inmate in the Tallahatchie County Correctional Facility in Tutwiler, Mississippi. His claims in this lawsuit arise from alleged incidents which occurred while he was incarcerated in the Union County Jail ("UCJ") in El Dorado, Arkansas. Plaintiff filed his original complaint on March 25, 2021, in the United States District Court, Western District of Louisiana.

1

(ECF No. 1). On March 31, 2021, an order was entered transferring the case to the Western District of Arkansas, El Dorado Division. (ECF No. 3).

In his original Complaint, Plaintiff attempted to assert unrelated claims against eighteen (18) Defendants while he was incarcerated at two separate facilities. Plaintiff named the following Defendants in the original Complaint: (1) City Tele Coin ("CTC") and its Chief Operating Officer Jerry Juneau - each of whom resides in Bossier City, Louisiana. Plaintiff stated they were "added for discovery purpose"; (2) Captain Richard Mitcham, Billy Perry, John Ward, Paul Kugler, Nurse Sherie Rice, Dr. Deanna Hopson, Correctional Officer Tubbs, Kevin Pendleton, UCJ, and Sheriff Ricky Roberts – each of whom is employed by or provides services to the UCJ; and (3) the Ouachita County Jail ("OCJ"), Sheriff David Norwood, Captain Cameron Owens, C/O McDonald, Nurse Doe, and C/O Erwing – each of whom is employed by or provides services to the OCJ. (ECF No. 1, pp. 4-5).

On April 5, 2021, the Court ordered Plaintiff to submit an Amended Complaint and a completed *in forma pauperis* ("IFP") application by April 26, 2021. (ECF No. 6). In this order the Court: (1) terminated the OCJ and the UCJ as Defendants because they are buildings, not legal entities subject to suit under 42 U.S.C. § 1983; (2) terminated CTC and Jerry Juneau as Defendants because Plaintiff did not assert any claims against them and clearly stated he had named them solely for the purpose of discovery; and (3) severed the claims against Sheriff David Norwood, Captain Cameron Owens, Officer McDonald, Nurse Doe, and Officer Erwing and opened up, *Guirlando v. Ouachita County Jail, et al.,* Case No. 1:21-1015, a lawsuit naming the Ouachita County individuals as Defendants. *Id.*

After two extensions of time, Plaintiff filed an Amended Complaint on June 24, 2021. (ECF No. 19). Plaintiff specifically names the following Defendants in the Amended Complaint:

the UCJ; Captain Richard Mitcham; Sheriff Ricky Roberts; Lieutenant Billy Perry; Lieutenant John Ward; Lieutenant Paul Kugler; Officer Tubbs; Officer Kevin Pendleton; Nurse Sherie Rice; Dr. Deanna Hopson; CTC; and Jerry Juneau.  Instead of using the § 1983 form complaint sent to him, Plaintiff only provides limited information on the form complaint and then refers the reader to an attached typewritten eighteen-page complaint.

## II.  APPLICABLE LAW

Under § 1915A, the Court is obligated to screen the case prior to service of process being issued.  The Court must dismiss a complaint, or any portion of it, if it contains claims that: (1) are frivolous, malicious, or fail to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b).

A claim is frivolous if "it lacks an arguable basis either in law or fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  An action is malicious when the allegations are known to be false, or it is undertaken for the purpose of harassing or disparaging the named defendants rather than to vindicate a cognizable right.  *Spencer v. Rhodes,* 656 F. Supp 458, 464 (E.D.N.C. 1987); *In re Tyler,* 839 F.2d 1290, 1293-94 (8th Cir. 1988).  A claim fails to state a claim upon which relief may be granted if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"In evaluating whether a *pro se* plaintiff has asserted sufficient facts to state a claim, we hold 'a *pro se* complaint, however inartfully pleaded . . . to less stringent standards than formal pleadings drafted by lawyers.'" *Jackson v. Nixon*, 747 F.3d 537, 541 (8th Cir. 2014) (*quoting Erickson v. Pardus*, 551 U.S. 89, 94 (2007)).  This means "that if the essence of an allegation is discernable, even though it is not pleaded with legal nicety, then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal

framework." *Id.* at 544. However, the complaint must still allege specific facts sufficient to support a claim. *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985).

### III. DISCUSSION

Plaintiff states that while he was incarcerated in the UCJ he was awaiting trial on pending criminal charges.[1] (ECF No. 19 at 5). It is impossible to ascertain from the Amended Complaint the dates of his incarceration in the UCJ. However, Plaintiff alleges that "[f]or the biggest part of [his] pre-trial detention, he was held in very harsh conditions in the tortuous hands of Defendant Captain Richard Mitcham at (UCJ)." *Id.* at 9.[2]

In the Amended Complaint (ECF No. 19), Plaintiff expounds on legal theory, makes broad legal statements, and even cites the Court to various cases. The Amended Complaint contains few dates which makes it difficult to determine when specified events occurred or how long specified conditions lasted.

Plaintiff divides his Amended Complaint (ECF No. 19) into the following claims:

(1) denial of medical care by Defendants Nurse Sherie Rice, Dr. Deanna Hopson, Captain Mitcham, Sheriff Roberts, Lieutenant Ward, and Officer Tubbs;[3]

---

[1] Plaintiff had two criminal cases filed against him in this district. The first, *United States v. Guirlando,* Case No. 1:19-cr-10001-001, charged Plaintiff with the sexual exploitation of a minor via the production of child pornography and the possession of child pornography. The indictment was filed on February 6, 2019. The case was dismissed by the Government when Plaintiff plead guilty in the second case, *United States v. Guirlando*, 1:20-CR-10005-001. The second case was filed on January 27, 2020. Plaintiff was charged with traveling with intent to engage in illicit sexual conduct and he pled guilty to that charge on the day the case was filed, January 27, 2020 (1:20-CR-10005-001;ECF Nos. 4-5). He was sentenced on May 3, 2021, to 60 months imprisonment in the Federal Bureau of Prisons. (*Id;* ECF Nos. 26-27).

[2] Plaintiff indicates he has filed another civil rights action against most of these same defendants, *Guirlando v. Mitcham,* Case No. 1:20-cv-01007. Plaintiff is represented by counsel in that suit. Plaintiff alleges the events outlined in this suit are "a different set of facts" although some allegations are "overlapping" which was "unpreventable." (ECF No. 19 at 10).

[3] Plaintiff also includes "Owens" in this claim. (ECF No. 19 at 14). However, Cameron Owens is a Defendant in his case concerning his treatment while incarcerated at the OCJ, *Guirlando v. Ouachita County Jail, et al.,* Case No. 1:21-cv-01015. Owens is not named as a defendant in the instant case.

(2)  First Amendment--Denial of Freedom of Speech.  Within Claim 2 Plaintiff includes: (a) a ban on books, newspapers, and magazines; (b) the improper handling of legal mail; (c) the monitoring of attorney-client communications; (d) the denial of access to the kiosk; (e) the deprivation of a commissary purchased tablet including all apps, movies, and music; and (f) the deprivation of commissary;

(3) Interference with Privileged Correspondence.  Within Claim 3,  Plaintiff includes (a) the opening of legal mail; (b) inhumane conditions of confinement; (c) the denial of access to legal materials; and (d) the denial of the free exercise of religion;

(4) Denial of Due Process and Equal Protection;

(5) Violations of the Federal Privacy Act;

(6) Violations of 42 U.S.C. § 1985 and the Racketeer Influence and Corrupt Organizations Act ("RICO").

Plaintiff is suing Defendants in their personal and official capacities.  He is seeking compensatory and punitive damages, a declaratory judgment, and various forms of injunctive relief.[4]   As is clear from above, Plaintiff has grouped multiple distinct legal claims under his headings.  Rather than proceed using Plaintiff's arbitrary division of claims, the Court will proceed by summarizing the allegations of the Amended Complaint under the discernable legal claims and then determine whether these allegations state plausible claims.

**A.  Claims Against the UJC**

Plaintiff names the UJC as a Defendant in the Amended Complaint.  As previously stated, the Court once before dismissed the UJC because the jail is a building, not a legal entity subject to

---

[4] Because Plaintiff is no longer incarcerated in the UCJ, his claims for injunctive relief are moot.  *See e.g.*, *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997) (release or transfer from the institution moots requests for injunctive relief).

suit under 42 U.S.C. § 1983.   *Owens v. Scott Cnty. Jail,* 328 F.3d 1026, 1027 (8th Cir. 2003)(a detention facility is not a legal entity that can be sued in § 1983).

Accordingly, by separate Order Union County will be substituted in place of the UCJ.

**B.  Claims against Jerry Juneau**

Plaintiff states he has named Jerry Juneau for discovery purposes as he is the Chief Executive Officer of CTC.   Plaintiff makes no factual allegations against Juneau.   Accordingly, I recommend Defendant Jerry Juneau be dismissed from this lawsuit.

**C.  Denial of Medical Care Claim**

**(1) Allegations**

In his denial of medical care claim, Plaintiff alleges that prior to his incarceration he was under the care of specialists and had underwent an "array of surgeries."   (ECF No. 19 at 12). Plaintiff indicates he was under the care of Dr. Lawrence Danna due to fractures of his nose and orbital sockets.   *Id.*   Plaintiff alleges he developed a deviated septum which caused breathing issues, pain, and discomfort.  *Id.*   When at UCJ, Plaintiff asserts he requested continued treatment from Dr. Danna from Nurse Rice and Captain Mitcham.  *Id.*   However, no care was given.  *Id.* When he was denied access to the kiosk, Plaintiff indicates he was refused access to paper sick call request forms by Captain Mitcham, Lieutenant Kugler, and Nurse Rice.   He alleges this in effect denied him access to medical care.[5]   Plaintiff maintains that Sheriff Roberts, Captain Mitcham, Nurse Rice, and Dr. Hopson "should be liable for the care of maintaining a policy, custom or practices or lack of policy that would allow Plaintiff or other inmates the access to medical services if access to the system in the kiosk was revoke[d], denied or if in segregation as he was without access to the kiosk."  *Id.*

---

[5] Clearly, as Plaintiff was able to ask Nurse Rice for a medical form, he had some means of directly communicating with her.

Further, Plaintiff alleges that prior to his arrest he was diagnosed with spindle cell lipoma on his cervical spine. (ECF No. 19 at 13). While the mass was removed prior to his incarceration, Plaintiff contends the condition required follow-up care which he was not given. *Id.* When a new mass developed, Plaintiff alleges he was denied specialist care. *Id.* As a result, Plaintiff maintains the mass continued to grow larger and he was in pain. *Id.*

On April 27, 2020, Plaintiff indicates he was housed in O-pod. (ECF No. 19 at 13). He alleges rusted table "collapsed" on him when he sat on it causing him serious injury to his neck and back. *Id.* Plaintiff maintains he was denied medical treatment for the injuries. *Id.*

On April 30, 2020, Plaintiff alleges Lieutenant Ward and Officer Tubbs gave orders for the inmates in Plaintiff's pod to pack their belongings.[6] (ECF No. 19 at 14). Due to the length of his detention, Plaintiff alleges he had an "enormous load of property, most of it legal work." *Id.* He estimated his bundle weighed over fifty pounds. *Id.* Plaintiff protested that due to his recent injury he could not carry that heavy of a bundle. *Id.* Another inmate offered assistance, however, Lieutenant Ward "made a medical determination that there was nothing wrong with [Plaintiff] and to carry the weight of the bag [himself]." *Id.* Plaintiff alleges the pain prevented him from lifting the bag, so he had to drag the bundle to his new pod. *Id.* Plaintiff asserts that he "reported injuries to the defendants named. He maintains that their failure to adequately train or supervise staff, including medical staff, "effectively denied [him] access to diagnostics and treat[ment]." *Id.*

**(2). Plausibility of the Claim**

Jail officials violate the Due Process Clause of the Fourteenth Amendment when they exhibit deliberate indifference to a pretrial detainee's objectively serious medical needs. *See Ivey v. Audrain Cnty., Mo.,* 968 F.3d 845, 848 (8th Cir. 2020). To succeed on this type of claim, a

---

[6] Plaintiff also lists a Defendant Owens. However, he is a defendant in another lawsuit. *Guirlando v. Ouachita County Jail, et al.,* Case No. 1:21-cv-01015.

Plaintiff must demonstrate that he had an objectively serious medical need, and that the defendant actually knew of but deliberately disregarded that need. *Id.* (*citing Morris v. Cradduck*, 954 F.3d 1055, 1058 (8th Cir. 2020)).

Plaintiff has alleged plausible individual capacity claims against Captain Mitcham, Nurse Rice, and Dr. Hopson. He has also alleged plausible official capacity claims against these Defendants and against Sheriff Roberts.

Plaintiff has failed to allege a denial of medical care claim against Lieutenant Ward, Lieutenant Kugler, and Officer Tubbs. Plaintiff has not alleged that he was made to lift the property by Lieutenant Ward or that he was unable to move his property. He simply alleges he had to drag his property. Plaintiff has not made any factual allegations against Lieutenant Kugler other than that he on one occasion denied Plaintiff a paper form on which to make a medical request. With respect to Officer Tubbs, Plaintiff has only alleged that he was present and/or also gave an order for the inmates to pack up their belongings. Even under the most liberal pleading standards these factual allegations are insufficient to state plausible claims against these Defendants. Accordingly, I recommend that the denial of medical care claims be dismissed against Lieutenant Ward, Lieutenant Kugler, and Officer Tubbs.

### D.  Complete Ban on Publications

### (1).  Allegations

Plaintiff alleges the UCJ has a complete ban on books, magazines, and newspapers. (ECF No. 19 at 14 & 16). Plaintiff alleges while housed at the UCJ he received none "of the books, newspapers and magazines paid for by his loved one." *Id.* at 16. Plaintiff indicates that some publications like *Prison Legal News* were returned to the publisher while other subscriptions were

not returned or delivered to him.[7]  *Id.*  When Plaintiff asked Captain Mitcham what happened to his subscriptions, he alleges Captain Mitcham responded:  "[C]an I give you [a] suggestion to have your mommy order me, stuff I want to read."  *Id.*  Plaintiff asserts that "[t]he smile was wiped off [Captain Mitcham's] face when Plaintiff replied:  'my mom is not ordering you "boys life" as that is what everyone [was] saying he was into.'"  *Id.*

### (2).  Plausibility of the Claim

"Prison regulations which restrict an inmate's access to publications are valid under the Constitution if reasonably related to legitimate penological interests."  *Cooper v. Schriro,* 189 F.3d 781, 784 (8th Cir. 1999)(cleaned up).  Given Plaintiff's allegations that there was a complete ban on books, newspapers, and magazines, "we believe the prison would be obligated to proffer a legitimate reason for any decision to deny . . . access to these materials."  *Id.*  A plausible claim has been stated against Sheriff Roberts in his official capacity and Captain Mitcham in both his individual and his official capacities.

### E.  Interference with Legal Mail

### (1).  Allegations

Plaintiff also alleges that Defendants "denied the proper procedure for legal mail." (ECF No. 19 at 15).  When Plaintiff protested his legal mail was being opened, he alleges Captain Mitcham merely laughed and continued to open clearly marked legal mail.  *Id.*

On or about June 7, 2020, Plaintiff alleges a packet of legal mail from his attorney was found open and lying in the laundry room.  (ECF No. 19 at 16).  Plaintiff alleges he does not have access to this area and the envelope was delivered to him by Lieutenant Perry and Officer Pendleton.  *Id.*  Plaintiff indicates the documents involved an ongoing civil case including

---

[7] With respect to *Prison Legal News*, Plaintiff alleges it was ordered for him on or about April 13, 2020, and he never received a copy of it.  (ECF No. 19 at 17).

"strategy and methods of the legal theory and the type of discovery we are going to seek and the manner we want to get the court to order it as to prevent deletion of videos, and falsify documents are also matters that caused damage to the case." *Id.*

### (2). Plausibility of the Claim

It is settled law that "privileged prisoner mail, that is mail to and from an inmate's attorney and identified as such, may not be opened for inspections for contraband except in the presence of the prisoner." *Beaulieu v. Ludeman,* 690 F.3d 1017, 1037 (8th Cir. 2012). Plaintiff has alleged a plausible claim against Captain Mitcham. However, no plausible claim is stated against Lieutenant Perry or Officer Pendleton. Plaintiff has failed to allege either one opened his legal mail, had any role in responding to his allegations that his legal mail was being opened, or had any authority to take corrective action. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)("a plaintiff must plead that each Government-official defendant, through the official's own actions, has violated the Constitution"). Accordingly, I recommend that the claims against Lieutenant Perry and Officer Pendleton be dismissed.

### F. Deprivation of Commissary Purchases and Tablet and Contents

### (1). Allegations

On or about March 1, 2020, and throughout his stay at UCJ, Plaintiff alleges that there were numerous occasions on which "he was deprived of his purchases commissary and the money was not returned even thou he did not receive his commissary or sign for his commissary." (ECF No. 19 at 16). Plaintiff believes "it [was] done repeatedly as retaliation." *Id.* On approximately March 4, 2020, Plaintiff alleges the UCJ, and CTC deprived him of "communication through the paid for tablet including all the apps, movies and music he had purchased." (ECF No. 19 at 15).

### (2). Plausibility of the Claim

"The Due Process Clause of the Fourteenth Amendment provides that '[n]o state shall . . . deprive any person of life, liberty, or property, without due process of law.'" *Walters v. Wolf*, 660 F.3d 307, 311 (8th Cir. 2011)(*quoting* U.S. Const. Amend. XIV, § 1). "Procedural due process imposes constraints on governmental decisions which deprive individuals of liberty or property interests within the meaning of the Due Process Clause of the . . . Fourteenth Amendment." *Matthews v. Eldridge*, 424 U.S. 319, 332 (1976)(internal quotation marks omitted). "In some circumstances . . . the Court has held that a statutory provision for a postdeprivation hearing, or a common-law tort remedy for erroneous deprivation, satisfies due process." *Zinermon v. Burch*, 494 U.S. 113, 128 (1990). Specifically, when the deprivation is the result of a random and unauthorized act and not pursuant to some established state procedure, the Court has held that "adequate postdeprivation remedies satisfy the requirements of due process." *Walters*, 660 F.3d at 312 (citations omitted). "The loss of property . . . is in almost all cases beyond the control of the State, in most cases it is not only impracticable, but impossible, to provide a meaningful hearing before the deprivation." *Id.*

Plaintiff has not alleged there was any pattern to the deprivation of commissary or that it was the result of intentional acts of one or more of the named Defendants. Deprivation of property through random actions does not state a plausible claim under the Due Process Clause.

However, with respect to his claim regarding the tablet, he has sufficiently alleged that he was completely cut-off from being able to use his purchased tablet or any purchased material on it. Plaintiff has stated a plausible claim against CTC. He makes no allegation that his tablet usage was cut-off pursuant to a custom, policy, or practice of Union County. *Monell v. Dep't. of Soc. Srvs.,* 436 U.S. 658 (1978)(government entity liable only where constitutional deprivation resulted

from its policy, custom, or practice).  According, I recommend that this claim be allowed to proceed only against CTC.

### G.  Unconstitutional Conditions of Confinement

### (1).  Allegations

Plaintiff maintains he was housed in an unsafe environment.  (ECF No. 19 at 13).  By way of example, he points out that the table in the pod he was assigned to was so rusted that it collapsed when he sat on it causing him injury.  *Id.*  Plaintiff alleges he spoke to Captain Mitcham about the poor conditions.  *Id.*

Plaintiff also maintains he was housed under inhumane conditions.  Specifically, Plaintiff alleges he was moved to the "hole" and told he would remain there until he left the UCJ.[8]  *Id.* at 17.  Plaintiff alleges the phone had been shut off; he received no mail; and he had no communication with anyone.  *Id.*  He describes the conditions in the "hole" as follows:

> Of the 24 hours they are keeping the plaintiff in a windowless room with the lights out 18 hours a day.  . . . denial of all his property including legal work, denial of commissary, privileges afforded to other inmates, the gross[] conditions of the cell they chose for him that had feces all over and the stench of urine from somewhere could gag a person, the deprivation of clothes, grooming equipment, hygiene products, reading and writing material is causing a dangerous mental state that could be permanent.

*Id.*  Plaintiff further alleges the cell was "flooded, smeared with feces and infested with insects."  *Id.* at 19.  He maintains this was all done to gain the upper hand in litigation against Captain Mitcham.

---

[8] It is not clear the date the move to the "hole" occurred on.  Earlier in the paragraph, Plaintiff does refer to the date April 13, 2020, but he is referring to the ordering of a subscription for the *Prison Legal News.* (ECF No. 19 at 17).

**(2).  Plausibility of the Claim**

Pretrial detainees "are entitled to reasonably adequate sanitation, personal hygiene, and laundry privileges, particularly over a lengthy course of time."  *Beaulieu v. Ludeman*, 690 F.3d 1017, 1045 (8th Cir. 2012) (cleaned up).  "In considering whether the conditions of pretrial detention are unconstitutionally punitive, we review the totality of the circumstances of a pretrial detainee's confinement."  *Morris v. Zefferi*, 601 F.3d 805, 810 (8th Cir. 2010).

The Court believes a plausible claim has been stated against Captain Mitcham and Sheriff Roberts.  However, with respect to the other named Defendants, Plaintiff does not indicate any of them were personally involved in having him moved to this cell, were responsible for redress of his grievances about the conditions in the cell or had any authority to take corrective action.

Accordingly, I recommend this claim be allowed to proceed against Captain Mitcham and Sheriff Roberts.  No plausible claims have been stated against the remaining Defendants.

**H.  Due Process Claim with respect to his Movement to the Hole**

**(1).  Allegations**

Plaintiff alleges he received no due process prior to being moved to the hole and was never told the reason he was moved into the "tortious" conditions.  (ECF No. 19 at 17).  He believes his movement into the cell was to "gain the upper hand" in his civil litigation.  *Id.*

**(2).  Plausibility of the Claim**

These allegations are insufficient to state a plausible claim.  Plaintiff has no right to be housed in a specific location within the jail.  *Nash v. Black,* 781 F.2d 665, 668 (8th Cir. 1986)(the constitutional purpose of the Due Process Clause is to "protect a substantive interest to which the individual has a legitimate claim of entitlement").  Discretionary decisions regarding inmate classification or housing implicate no liberty interest.  *Avery v. Hill,* No. 5:18-cv-05061 (W.D.

Ark. Aug. 27, 2019).  Movement from one cell to another, regardless of the differences between that cell and those of the general population, requires procedural due process only when the movement is the result of a disciplinary infraction.  *See Brown-El v. Delo,* 969 F.2d 644, 647 (8th Cir. 1992)(when "an inmate is deprived of privileges or placed in a special confinement status in order to punish him for past misconduct, then due process requires some kind of hearing beforehand")(cleaned up)).  Plaintiff has not alleged that he was charged with a disciplinary violation.  *Wolff v. McDonnell,* 418 U.S. 539, 563-67 (1974)(in connection with a disciplinary charge, the inmate must be provided with advance written notice of the charges against him, an opportunity to call witnesses and present a defense, and a written statement of the evidence relied upon by the fact finder, and the reasons for the charges).

Plaintiff's factual allegations are insufficient to raise a right to relief above the speculative level.  Accordingly, I recommend that this Due Process claim be dismissed.  Plaintiff's First Amendment retaliation claim premised on this move will be addressed below.

### I.  Free Exercise of Religion, RFRA,[9] and RLUIPA[10]

### (1).  Allegations

Plaintiff alleges he was denied a "Jewish Bible and material that was shipped to him from Amazon."  (ECF No. 19 at 18).[11]  He alleges this was done "to force adherents like Plaintiff to forego religious precepts."  *Id.*  Plaintiff alleges he informed Captain Mitcham that this district Court had been clear on the subject of religious rights in *Emery v. Helder,* Case No. 5:16-cv-05193. *Id.*  Captain Mitcham is alleged to have responded:  "Fxxx them, they are not here are they?"  *Id.*

---

[9] Religious Freedom Restoration Act.

[10] Religious Land Use and Institutionalized Persons Act.

[11] These allegations overlap with his allegations about the total ban of publications from outside sources including Amazon.

### (2). Plausibility of the Claim

### (a). First Amendment

"Inmates clearly retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise or religion." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987). However, the right is not without limitation. *Id.* Inmates must be afforded "reasonable opportunities . . . to exercise the religious freedom guaranteed" by the First Amendment. *Cruz v. Beto,* 405 U.S. 319, 322 n.2 (1972). To make out a Free Exercise violation the Plaintiff must first establish that the complained of action "substantially burdens" his ability to practice his religion. *Patel v. U.S. Bureau of Prisons*, 515 F.3d 807, 813 (8th Cir. 2008). A substantial burden means that the challenged actions "must significantly inhibit or constrain conduct or expression that manifests some central tenet of a person's individual religious beliefs; must meaningfully curtail a person's ability to express adherence to his or her faith; or must deny a person reasonable opportunities to engage in those activities that are fundamental to a person's religion." *Id.*

Plaintiff has made a plausible free exercise of religion claim against Captain Mitcham. However, Plaintiff has not identified any of the other named Defendants as having been involved in this constitutional deprivation. No plausible claim has been stated against the other individual Defendants. Accordingly, I recommend that the First Amendment free exercise of religion claim be allowed to proceed against Captain Mitcham in both his individual and his official capacities.

### (b). RFRA

In *City of Boerne v. Flores*, 521 U.S. 507, 532-36 (1997), the RFRA was found unconstitutional as applied to the states. The RFRA remains enforceable against the federal government and as a defense to the application of federal law. 42 U.S.C. § 2000bb-3(a); *see also*

*In re Young*, 141 F.3d 854 (8th Cir. 1998). This case does not involve federal agencies, federal officers, or the application of federal law. Accordingly, the RFRA has no application to this case.

### (c). RLUIPA

The RLUIPA does not permit actions against governmental employees in their individual capacities. *Best v. Cox*, 2020 WL 6572656, *4 (E.D. Ark. Oct. 21, 2020). Further, only injunctive relief is available under the RLUIPA on official capacity claims. *Id.* at 18-19; *see also Van Wyhe v. Reisch*, 581 F.3d 639, 655 (8th Cir. 2009). As previously noted, Plaintiff's injunctive relief claims are moot due to his transfer to a state facility to serve his prison sentence. *Randolph v. Rodgers*, 253 F.3d 342, 345 (8th Cir. 2001)(inmates transfer to a different facility moots claims for injunctive relief). No plausible claim is therefore stated under the RLUIPA.

### J. Sixth Amendment Right of Access to Counsel

### (1). Allegations

According to Plaintiff, he was awaiting trial on criminal charges while at the UCJ. (ECF No. 19 at 18). He contends his Sixth Amendment right to the unimpeded assistance of counsel was violated when for long stretches of time his legal mail was opened; he was denied access to his legal work; and he was denied access to the phone. *Id.* The Plaintiff identifies Captain Mitcham and Sheriff Roberts as being responsible for these actions. *Id.* at 15-17.

### (2). Plausibility of the Claim

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI; *see also Gideon v. Wainwright*, 372 U.S. 335, 342-43 (1963).[12] "When the government deliberately interferes with the confidential relationship between a criminal defendant and defense counsel,

---

[12] There is no constitutional or statutory right to counsel in civil cases. *Phillips v. Jasper Cnty. Jail.*, 437 F.3d 791, 794 (8th Cir. 2006).

that interference violates the Sixth Amendment right to counsel if it substantially prejudices the criminal defendant." *Williams v. Woodford,* 384 F.3d 567, 584-85 (9th Cir. 2004). "A criminal defendant's ability to communicate candidly and confidentially with his lawyer is essential to his defense." *Nordstrom v. Ryan,* 762 F.3d 903, 910 (9th Cir. 2014). However, the "Sixth Amendment does not require in all instances full and unfettered contact between an inmate and counsel." *Mann v. Reynolds* 46 F.3d 1055, 1060 (10th Cir. 1995).[13]

While Plaintiff does not provide any further factual allegations as to the duration of these alleged contact restrictions or describe in any detail the resulting harm, the Court believes Plaintiff has asserted plausible claims against Captain Mitcham and Sheriff Roberts at this stage of the process.

### K.  Access to the Courts

### (1).  Allegations

Plaintiff alleges he was denied access to his legal papers, a law library, and was unable to submit grievances for long stretches of time. (ECF No. 19 at 19). In fact, Plaintiff alleges he was only able to submit his Amended Complaint by writing it "with the help of another inmate." *Id.*

### (2).  Plausibility of the Claim

The Supreme Court has held that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Bounds v. Smith*, 430 U.S. 817, 828 (1977). As a general principle, "[t]o prove a violation of the right of meaningful access to the courts, a prisoner must establish that the

---

[13] A prisoner's right to communicate with his attorney may involve a number of constitutional principles including the First Amendment rights to the free speech and access to the courts. Plaintiff's First Amendment claims are addressed elsewhere.

[county] has not provided an opportunity to litigate a claim challenging the prisoner's sentence or conditions of confinement in a court of law, which resulted in actual injury, that is, the hindrance of a nonfrivolous and arguably meritorious underlying legal claim."    *Hartsfield v. Nichols*, 511 F.3d 826, 831 (8th Cir. 2008) (citations omitted).  To establish such hindrance, there must be some evidence that conduct by prison officials adversely affected the outcome of a prisoner's litigation. *See Entzi v. Redmann,* 485 F.3d 998, 1005 (8th Cir. 2007).

No plausible denial of access to the courts claim has been stated.  Plaintiff has not alleged the existence of any actual injury.  This is fatal to his claim.

### L.  Federal Privacy Act

### (1).  Allegations

Plaintiff alleges the UCJ violated "the Federal Privacy Act, when they posted the booking photo of Plaintiff on the jail's website.  Which direct[ly] and indirectly lead to the assault against the plaintiff when they compare the photo on the website and match it to other photos that identified him as a sex offender."   (ECF No. 19 at 19).  Plaintiff states he had told other inmates he was in custody for bank fraud.  *Id.*  Furthermore, Plaintiff alleges the United States Marshal Service is forbidden from releasing information to the public.  *Id.*

### (2).  Plausibility of the Claim

The Federal Privacy Act, codified at 5 U.S.C. § 522a, "contains a comprehensive and detailed set of requirements for the management of confidential records held by Executive Branch agencies.  If an agency fails to comply with those requirements 'in such a way as to have an adverse effect on an individual,' the Act authorizes the individual to bring a civil action against the agency."  *Federal Aviation Admin. v. Cooper,* 566 U.S. 284, 287 (2012)(*citing* 5 U.S.C. §

552a(g)(1)(D). As no federal agency is sued in this case and the documents in question are not being held by a federal official, no plausible claim is stated.[14]

Furthermore, Plaintiff has no right to privacy in his arrest records--including an arrest or booking photograph. *See Paul v. Davis,* 424 U.S. 693, (1976)(there is no constitutional privacy protection against publicizing the fact of Respondent's arrest on a shoplifting charge); *Andaluz-Prado v. Helder,* 2016 WL 4432705 *2 (W. D. Ark. 2016) (arrest records, including any booking photographs, are public records and are not protected from disclosure).

## M. Retaliation

### (1). Allegations

Intermingled throughout the Amended Complaint are Plaintiff's factual allegations that various of the actions taken by Captain Mitcham and Sheriff Roberts were in retaliation for Plaintiff's exercise of his First Amendment rights to submit grievances and to file civil actions. Among others, Plaintiff asserts that Captain Mitcham on or about April 14th, April 21st, August 7th, and August 22nd, moved him to a windowless cell in retaliation for the exercise of his constitutional rights. (ECF No. 19 at 15). Then, in conjunction with CTC, Plaintiff maintains they violated his rights when on each of these occasions they denied him the "privileges of the Kiosk." *Id.* Specifically, Plaintiff alleges that CTC cut him off "from access [to] all communication" including communication with his loved-ones and the means to file grievances and sick-call requests. *Id.* Plaintiff alleges this was done without there being any fault on his part and in retaliation for the filing of a civil suit. *Id.* He maintains this is true of the opening of his legal mail; his placement in the hole; the denial of his access to the grievance process; the repeated

---

[14] Any claim against the United States Marshal Service would need to be brought under the Federal Tort Claims Act, 28 U.S.C. § 2674 *et seq.* Any claims against individual federal officials would need to be brought under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,*

deprivation of his commissary; depriving him of his legal work; and the failure to feed him on January 18, 2021.   (ECF No. 19 at 1, 15-17, 23).  Finally, Plaintiff maintains Captain Mitcham went so far as to contact Captain Owens at the OJC about the Plaintiff when he was housed there. *Id.* at 10.

### (2).  Plausibility of the Claim

"The filing of a prison grievance . . . is protected First Amendment activity."   *Lewis v. Jacks*, 486 F.3d 1025, 1029 (8th Cir. 2007).  Filing a civil rights lawsuit is also an activity protected by the First Amendment.  *Tyler v. University of Arkansas Bd. of Trustees*, 628 F.3d 980, 986 (8th Cir. 2011).  "[A]ctions taken in retaliation for an inmate's [exercise of his First Amendment rights] are actionable under 42 U.S.C. § 1983."   *Nelson*, 603 F.3d at 450; *Madewell v. Roberts,* 909 F.2d 1203, 1206 (8th Cir. 1990)(otherwise proper acts are actionable under § 1983 if taken in retaliation for exercise of a constitutionally protected act).

To establish a retaliation claim, Plaintiff must prove "(1) he engaged in a protected activity, (2) [one or more of the Defendants] took adverse action against him that would chill a person of ordinary firmness from continuing in the activity, and (3) the adverse action was motivated at least in part by the exercise of the protected activity."   *Spencer v. Jackson Cnty.*, 738 F.3d 907, 911 (8th Cir. 2013) (quotation omitted).   "This is an objective test: [t]he question is not whether the plaintiff [him]self was deterred, though how plaintiff acted might be evidence of what a reasonable person would have done."   *Scheffler v. Molin*, 743 F.3d 619, 621 (8th Cir. 2014).

With the exception of Captain Mitcham, Sheriff Roberts, and CTC, Plaintiff has made no factual allegations that the remaining Defendants were personally involved in the alleged acts of retaliation.  Plausible claims have been stated against Captain Mitcham, Sheriff Roberts, and CTC.

### N.  Section 1985 Interference with Witnesses

### (1).  Allegations

Plaintiff alleges that Captain Mitcham used "his connection and influence to try and pressure potential witnesses in federal court that would be connected to plaintiff['s] civil [case] by threatening them, denying privileges and making comments about his close relation to a federal judge (Judge B. Bryant) hearing the case."  (ECF No. 19 at 20).  Plaintiff further alleges that Captain Mitchem repeated these types of comments "over and over to pod inmates . . . after . . . everyone at the jail [was mailed] a postcard [by a legal assistant] asking them to step forward if they witness[ed] anything they felt that was relevant concerning the federal civil" rights case Plaintiff had brought against Captain Mitcham.  *Id.*

Specifically, Plaintiff alleges the comments made by Captain Mitcham include: "You better stay clear of that suit between Marco and me if you know what's good (and) me and [J]udge Bryant are buddies and the case is going to be dismissed and you all better not write that lady back if you['re] . . . smart. [15]"  *Id.*  Plaintiff maintains these comments went on for months.  *Id.*  Further, he states different people informed him that they no longer wanted to "to report what they witness[ed] because of the fear of [Captain] Mitcham."  *Id.*  Finally, Plaintiff contends Captain Mitcham asked Nurse Rice "to change, alter and falsify certain documents from their department."  *Id.* at 21.  Plaintiff contends there is a witness to this.  *Id.*  Plaintiff assumes this happened with "custody staff as well."  *Id.*

---

[15] Although Plaintiff has made no formal request for the undersigned to recuse, the Court finds it necessary to address this issue given these allegations.  Under 28 U.S.C. § 455(a), "[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned."  Appearance at the same social events does "little to create an appearance of impropriety."  *Moran v. Clarke,* 296 F.3d 638, 649 (8th Cir. 2002), *abrogated on other grounds by Manuel v. City of Joliet,* 137 S. Ct. 911 (2017).  A "friendship of sufficient depth and duration as to warrant reciprocal visits to one another's homes only exacerbates the problem."  Assuming Captain Mitcham made the statements attributed to him, the undersigned knows Captain Mitcham only in the context of his being a defendant in civil lawsuits filed by inmates in this district.  There is simply no basis for the undersigned to recuse in this case.

### (2). Plausibility of the Claim

Subsection 2 of 42 U.S.C. § 1985 provides as follows:

> If two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully . . . or if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws.

42 U.S.C. § 1985(2).

A claim under 42 U.S.C. § 1985 is premised upon the existence of an alleged conspiracy which must be motivated by a class-based animus. *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 268-69 (1993). Plaintiff has made no factual allegations regarding any class-based animus. Therefore, no plausible claim has been stated.

### O. Equal Protection

### (1). Allegations

It is not clear from the Complaint precisely what Plaintiff's Equal Protection allegations are. However, from what can be gleaned from the Amended Complaint, it appears that he is relying on his allegations about Captain Mitcham's intimidation of witnesses and his allegations regarding his placement in the "hole."

### (2). Plausibility of the Claim

"The Equal Protection Clause requires the government to treat all similarly situated people alike." *Barstad v. Murray Cnty.,* 420 F.3d 880, 884 (8th Cir. 2005). "The heart of an equal protection claim is that similarly situated classes of inmates are treated differently, and that this difference in treatment bears no rational relationship to any legitimate penal interest." *Weiler v. Purkett,* 137 F.3d 1047, 1051 (8th Cir. 1998)(citation omitted).

To allege a cognizable claim, Plaintiff must establish: (1) intentional or purposeful discrimination, and (2) a violation of a fundamental right, membership in a protected class, or different treatment of similarly situated inmates. *Phillips v. Norris,* 320 F.3d 844, 848 (8th Cir. 2003). Prisoners are not a protected class. *Murray v. Dosal,* 150 F.3d 814 (8th Cir. 2003). Plaintiff has not alleged he is a member of any other protected class. Further, an inmate has no right to a particular housing assignment. *See Allen v. Purkett,* 5 F.3d 1151, 1153 (8th Cir. 1993)(prisoner "had no right . . . to be housed in a certain barrack or housing unit, or with certain inmates"); *Lyon v. Farrier,* 727 F.2d 766, 768 (8th Cir. 1984)("Among the liberties which prisoners do not enjoy is a choice of cells. Transfer within the prison, or to another prison, is within the discretion of prison officials"). Plaintiff has not alleged he is similarly situated to those who allegedly received more favorable treatment. Without such allegations, no viable Equal Protection claim exists.

While prisoners are protected under the Equal Protection Clause of the Fourteenth Amendment from invidious discrimination based on race, Plaintiff has not alleged his own race or that of any other individuals who he believes were similarly situated but given dissimilar treatment. *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974) (citation omitted). "Proof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause." *City of Cuyahoga Falls v. Buckeye Cmty. Hope Found*, 538 U.S. 188, 194 (2003) (internal quotations and citation omitted.)

Plaintiff has failed to state a plausible Equal Protection claim.

### P.  Failure to Protect

### (1).  Allegations

Plaintiff alleges that all the UCJ Defendants, except for CTC, failed to protect him from attack by fellow inmates.   (ECF No. 19 at 21).  Plaintiff alleges that he was assaulted, terrorized, and subjected to extortion by other inmates because of his status as a sex offender.  *Id.* at 22.

Plaintiff alleges Union County is liable because of the lack of a policy or custom of performing a "risk" assessment of incoming detainee's or the practice of not using any existing policy regarding the performance of such an assessment, to identify at-risk detainees, including the Plaintiff, who are prone to attack or abuse by other prisoners.  Plaintiff maintains he should have been identified as an at-risk inmate due to his accused sex offender status, his age, his size, his naivete, and his passivity. (ECF No. 19 at 21-22).  Plaintiff contends the failure to so identify him was the moving force behind "the assault that occurred at the jail leaving him with a debilitating condition."  (ECF No. 19 at 22).    Plaintiff maintains that his complaints of sexual harassment and abuse in the jail fell on deaf ears.  *Id.*  Plaintiff indicates he was also subject to extortion and bribery and his complaints to Captain Mitcham fell on deaf ears.  *Id.*  With respect to the alleged attack, the Court is given no factual details such as date of the attack, where it occurred, who was involved, what injuries he received, etc.  *Id.*

### (2).  Plausibility of the Claim

Prison officials have a duty, under the Eighth Amendment, to protect prisoners from violence at the hands of other prisoners.  *Perkins v. Grimes,* 161 F.3d 1127, 1129 (8th Cir. 1998).  For pretrial detainees, this duty arises under the Due Process Clause of the Fourteenth Amendment.  *Kahle v. Leonard*, 477 F.3d 544, 550 (8th Cir. 2007).   However, the Eighth Circuit applies the Eighth Amendment elements applicable to convicted inmates to claims brought by pretrial

detainees under the Fourteenth Amendment.  *Chavero-Linares v. Smith*, 782 F.3d 1038, 1041 (8th Cir. 2015).

Not "every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety." *Farmer v. Brennan,* 511 U.S. 825, 834 (1994).  Instead, to prevail on his failure to protect claim, Plaintiff must satisfy a two-prong test.  Plaintiff must demonstrate that: (1) he was "incarcerated under conditions posing a substantial risk of serious harm," and (2) prison officials were "deliberately indifferent [to Plaintiff's] health or safety."  *See Holden v. Hirner,* 663 F.3d 336, 341 (8th Cir. 2011) (internal citations omitted).

Plaintiff has alleged plausible individual and official capacity claims against Captain Mitcham, Sheriff Roberts, and Union County.  However, he has not asserted plausible claims against the remaining Defendants.  As noted previously, Plaintiff cannot merely make broad conclusory statements such as "all Defendants" failed to protect him.  Instead, he must allege sufficient facts to establish that each Defendant was personally involved in the alleged constitutional violation.

**Q.  RICO**

**(1).  Allegations**

Plaintiff's RICO allegations are the same as those alleged under § 1985.  That is, the alleged interference with potential witnesses by Captain Mitcham.  (ECF No. 19 at 20).  Additionally, Plaintiff alleges that Captain Mitcham asked Nurse Rice to change, alter, and falsify certain documents.  *Id.* at 21.

### (2).  Plausibility of the Claim

"The major purpose behind RICO is to curb the infiltration of legitimate business organizations by racketeers."  *Atlas Pile Driving Co. v. DiCon Fin. Co.,* 886 F.2d 986, 990 (8th Cir. 1989)(*citing United States v. Turkette,* 452 U.S. 576, 591 (1981)).  RICO, codified at 18 U.S.C. §§ 1961 *et seq.*, provides a civil cause of action for "[a]ny person injured in his business or property by reason of a violation of section 1962." 18 U.S.C. § 1964(c).

In *H.J. Inc. v. Nw. Bell Tel. Co.,* 492 U.S. 229 (1989), the Supreme Court summarized the provisions of RICO as follows:

> RICO renders criminally and civilly liable "any person" who uses or invests income derived "from a pattern of racketeering activity" to acquire an interest in or to operate an enterprise in interstate commerce, § 1962(a); who acquires or maintains an interest in or control of such an enterprise "through a pattern of racketeering activity," § 1962(b); who, being employed by or associated with such an enterprise, conducts or participates in the conduct of its affairs "through a pattern of racketeering activity," § 1962(c); or, finally, who conspires to violate the first three subsections of § 1962, § 1962(d).  RICO provides for drastic remedies; conviction for a violation of RICO carries severe criminal penalties and forfeiture of illegal proceeds, 18 U.S.C. § 1963 . . .; and a person found in a private civil action to have violated RICO is liable for treble damages, costs, and attorney's fees, 18 U.S.C. § 1964(c).

*Id.* at 232-33.

Other than referring to RICO, Plaintiff has made only the most general allegations about witness intimidation that fall wholly short of stating a RICO cause of action under any of the above-described subsections.  Accordingly, I recommend that all RICO allegations be dismissed.

### R.  State Law Claim—Negligence

### (1).  Allegations

Plaintiff alleges that the UCJ Defendants failed "to use such care that is reasonable and prudent and careful under similar circumstances with prisoners."   (ECF No. 19 at 21).   He

maintains the Defendants' acts of negligence resulted in him being subjected to the types of conditions previously outlined.

### (2). Plausibility of the Claim

In Ark. Code Ann. § 21-9-301(a)[16] "all counties, municipal corporations, school districts, public charter schools, special improvement districts, and all other political subdivisions of the state" are granted immunity "from liability and from suit for damages except to the extent that they may be covered by liability insurance."  This immunity applies to agents and employees of the political subdivisions.   Ark. Code Ann. 21-9-301 (b); s*ee also Cousins v. Dennis*, 767 S.W. 2d 296 (Ark. 1989).  While the immunity does not apply to civil rights claims under federal legislation and intentional or malicious acts or omissions, *Doe v. Baum*, 72 S.W. 3d 476 (Ark. 2002), it clearly applies to negligence claims.

As the issue of whether the Union County or CTC has liability insurance that would cover any negligent acts is one that will be determined during discovery, Plaintiff has asserted a plausible claim against Union County, Sheriff Roberts, Captain Mitcham, and CTC.  However, no plausible claim is stated against the remaining Defendants.

### S.  State Law Claim--Intentional Infliction of Emotional Distress

### (1).  Allegations

Plaintiff maintains that the actions of "all named Defendants minus" CTC amounted to the intentional infliction of emotional distress.  (ECF No. 19 at 21).  Plaintiff specifically refers to the following:   selling him a tablet, apps, and music and then taking it away; charging him for commissary that was never received; failing to identify him as an at-risk inmate resulting in his

---

[16] Legislation approved on April 12, 2021, although not applicable to this case, clarifies that the immunity extends to "law enforcement agencies for and certified law enforcement officers employed by a public or private institution of higher education."  2021 Arkansas Laws Act 627 (S.B. 494).

being assaulted, sexually harassed, extorted, and robbed; and his conditions of confinement. *Id.* at 21-23. Plaintiff also "restates and incorporated all previous stated paragraphs." *Id.* at 22.

### (2). Plausibility of the Claim

Arkansas has long recognized a cause of action for the intentional infliction of emotional distress often referred to as the tort of outrage.[17] *M.B.M. Co., Inc. v. Counce*, 268 Ark. 269, 596 S.W. 2d 681 (1980). The essential elements of this cause of action are: (1) the actor intended to inflict emotional distress or knew or should have known that emotional distress was the likely result of his or her conduct; (2) the conduct was extreme and outrageous, beyond all possible bounds of decency, and utterly intolerable in a civilized community; (3) the actions of the defendant were the cause of the plaintiff's distress; and (4) the emotional distress sustained was so severe that no reasonable person could be expected to ensure it. *Holman v. Flores,* 551 S.W.3d 1, 6 (Ark. App. 2018).

The courts have said that this cause of action was not intended to provide a remedy for "every slight insult or indignity one must endure in life." *Kiersey v. Jeffrey,* 253 S.W.3d 438, 441 (Ark. 2007)(citation omitted). The type of conduct that meets the standard for outrage must be determined on a case-by-case basis. *Crockett v. Essex*, 19 S.W. 3d 585 (Ark. 2000). Additionally, it has been recognized that "in some cases the existence of a special relationship between the parties can justify a finding of outrage where 'the gist of the claim arose out of the violation of that relationship. . . . .'" *Allen v. Allison*, 155 S.W.3d 682, 692 (Ark. 2004)(*quoting McQuay v. Guntharp*, 963 S.W. 2d 583 (Ark. 1998)).

The Court believes the Plaintiff's allegations regarding the conditions under which he was confined as well as some of the conduct attributed to Captain Mitcham state plausible claims

---

[17] Arkansas does not recognize the negligent infliction of emotional distress as a viable cause of action. *See e.g., Dowty v. Riggs,* 385 S.W.3d 117 (Ark. 2010).

against Sheriff Roberts and Captain Mitcham. The alleged actions of the other Defendants are clearly insufficient to rise to the level necessary to constitute the intentional infliction of emotional distress.

## V. CONCLUSION

For the reasons stated above, I recommend the following:

(1). All claims against Jerry Juneau be **DISMISSED WITHOUT PREJUDICE**;

(2). The denial of medicals care claims against Defendants Sheriff Roberts, Captain Mitcham, Nurse Rice, and Dr. Hopson **PROCEED**; The denial of medical care claims against Lieutenant Ward, Lieutenant Kugler, and Officer Tubbs be **DISMISSED WITHOUT PREJUDICE**;

(3). The First Amendment Claim regarding the complete ban on publications against Sheriff Roberts and Captain Mitcham **PROCEED**;

(4). The First Amendment Claim regarding the opening of legal mail against Captain Mitcham **PROCEED**; The First Amendment Claim regarding the opening of legal mail against Lieutenant Perry and Officer Pendleton be **DISMISSED WITHOUT PREJUDICE**;

(5). The Due Process claim regarding the random deprivation of his commissary items be **DISMISSED WITHOUT PREJUDICE**; The Due Process claim regarding the deprivation of the tablet and its contents **PROCEED** against CTC;

(6). The Fourteenth Amendment unconstitutional conditions of confinement claim against Captain Mitcham and Sheriff Roberts **PROCEED;**

(7). The Due Process claim regarding Plaintiff's move to the "hole" be **DISMISSED WITHOUT PREJUDICE;**

(8).   The First Amendment free exercise of religion claim against Captain Mitcham **PROCEED**; The claims under the RFRA and the RLUIPA be **DISMISSED WITHOUT PREJUDICE;**

(9).   The Sixth Amendment claim against Captain Mitcham and Sheriff Roberts **PROCEED;**

(10).  The First Amendment right of access to the court claim be **DISMISSED WITHOUT PREJUDICE;**

(11).  The Federal Privacy Act claim be **DISMISSED WITHOUT PREJUDICE;**

(12).  The First Amendment retaliation claims against Sheriff Roberts, Captain Mitcham, and CTC, **PROCEED;**

(13).  The claim under 42 U.S.C. § 1985 be **DISMISSED WITHOUT PREJUDICE;**

(14).  The Equal Protection claim be **DISMISSED WITHOUT PREJUDICE;**

(15).  The failure to protect claim against Captain Mitcham, Sheriff Roberts, and Union County **PROCEED;**

(16).  The RICO claim be **DISMISSED WITHOUT PREJUDICE;**

(17).  The Arkansas state law negligence claim against Union County, Sheriff Roberts, Captain Mitcham, and CTC **PROCEED;**

(18).  The Arkansas state law intentional infliction of emotional distress claim against Captain Mitcham and Sheriff Roberts **PROCEED.**

(19).  All claims against Lieutenant Ward, Lieutenant Kugler, Officer Tubbs, Lieutenant Perry and Officer Pendleton be **DISMISSED.**  These individuals should be **TERMINATED** as Defendants in this lawsuit.

By separate order, the Amended Complaint should be served on Union County, Sheriff Roberts, Captain Mitcham, Nurse Rice, Dr. Hopson, and CTC.

The parties have fourteen (14) days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger *de novo* review by the district court.

IT IS SO ORDERED this 28th day of July 2021.

/s/ Barry A. Bryant
_____
HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE

31