IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

MARCO GUIRLANDO                                                                                         PLAINTIFF

v.                                              Civil No. 1:21-cv-01013

CITY TELE-COIN COMPANY, INC.;
CAPTAIN RICHARD MITCHAM; NURSE
SHERIE RICE; DR. DEANNA HOPSON;
SHERIFF RICKY ROBERTS, Union County,
Arkansas; and UNION COUNTY, ARKANSAS                                                DEFENDANTS

## REPORT AND RECOMMENDATION

This is a civil rights action filed by Plaintiff Marco Guirlando pursuant to 42 U.S.C. § 1983. Plaintiff proceeds *pro se* and *in forma pauperis*. Plaintiff's claims arose while he was incarcerated in the Union County Jail ("UCJ") awaiting trial on pending criminal charges and for a time after his conviction.[1]

Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3), the Honorable Susan O. Hickey, Chief United States District Judge, referred this case to the undersigned for the purpose of making a Report and Recommendation. The case is before the Court on a Motion to Dismiss (ECF No. 43) filed by City Tele-Coin Company, Inc. ("CTC"). The Motion was filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. After Plaintiff pointed out that CTC filed its Answer (ECF No. 35) prior to filing the Rule 12(b) motion making it untimely, CTC conceded that Plaintiff is technically correct and asks (ECF No. 55) the Court to treat the Motion as one for

---

[1] Plaintiff had two criminal cases filed against him in this district. The first, *United States v. Guirlando,* Case No. 1:19-cr-10001-001, charged Plaintiff with the sexual exploitation of a minor via the production of child pornography and the possession of child pornography. The indictment was filed on February 6, 2019. The case was dismissed by the Government when Plaintiff pled guilty in the second case, *United States v. Guirlando*, 1:20-CR-10005-001. The second case was filed on January 27, 2020. Plaintiff was charged with traveling with intent to engage in illicit sexual conduct and he pled guilty to that charge on the day the case was filed, January 27, 2020 (1:20-cr-10005-001;ECF Nos. 4-5). He was sentenced on May 3, 2021, to 60 months imprisonment in the Federal Bureau of Prisons. (*Id;* ECF Nos. 26-27).

1

judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.² The Motion will be so treated. Plaintiff has responded (ECF Nos. 49 & 52) to the Motion.

## I. PROCEDURAL HISTORY

Plaintiff filed an Amended Complaint on June 24, 2021. (ECF No. 19). Plaintiff specifically names the following Defendants in the Amended Complaint: the UCJ; Captain Richard Mitcham; Sheriff Ricky Roberts; Lieutenant Billy Perry; Lieutenant John Ward; Lieutenant Paul Kugler; Officer Tubbs; Officer Kevin Pendleton; Nurse Sherie Rice; Dr. Deanna Hopson; CTC; and Jerry Juneau.

A pre-service screening report and recommendation (ECF No. 23) which was adopted in toto on October 15, 2021 (ECF No. 41), dismissed various causes of action and a number of the Defendants.³ As relevant to CTC, the following plausible claims were found to exist: (1) a Fourteenth Amendment procedural due process claim; (2) a First Amendment retaliation claim; and (3) a state-law negligence claim. The Court did not read the Amended Complaint to assert a substantive due process claim against CTC. However, CTC has so read it and has moved for dismissal of the claim.

## II. APPLICABLE LAW

Federal Rule of Civil Procedure 12(c) provides that a party may move for judgment on the pleadings. The Court applies the same standard on a motion for judgment on the pleadings as it

---

² Rule 12(h)(2)(B) of the Federal Rules of Civil Procedure provides that a defense of failure to state a claim may be raised by motion under Rule 12(c).

³ In his response to the Motion to Dismiss, Plaintiff indicates that because he was in-transit he did not receive notice of the entry of the screening report and recommendation. (ECF No. 52 at 3). He also maintains he should be given an opportunity to again amend his complaint to correct any deficiencies. *Id.* The proper manner to bring his lack of notice regarding the report and recommendation and its adoption to the attention of the Court, would be to file a motion asking Chief United States District Judge Hickey to reconsider her order (ECF No. 41) adopting the report and recommendation. Plaintiff may also file a Motion to Amend his Amended Complaint.

would on a Rule 12(b)(6) motion for failure to state a claim. *Westcott v. City of Omaha,* 901 F.2d 1486, 1488 (8th Cir. 1990).

Rule 8(a) contains the general pleading rules and requires a complaint to present "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "In order to meet this standard, and survive a motion to dismiss under Rule 12(b)(6), 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Braden v. Wal–Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (cleaned up)(quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678. In evaluating the plausibility of a claim, "[t]he Court may consider the pleadings themselves, materials embraced by the pleadings, exhibits attached to the pleadings, and matters of public record." *Mills v. City of Grand Forks,* 614 F.3d 495, 498 (8th Cir. 2010). While the Court will liberally construe a *pro se* plaintiff's complaint, the plaintiff must allege sufficient facts to support his claims. *See Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004).

### III. DISCUSSION

CTC has now moved for dismissal on the following grounds (1) for failure to state a claim; (2) as to the federal claims, on the basis of qualified immunity; and (3) as to the state law claims on the basis of statutory immunity.[4]

In the Amended Complaint (ECF No. 19), Plaintiff expounds on legal theory, makes broad legal statements, and even cites the Court to various cases. The Amended Complaint contains few

---

[4] CTC argues that the Plaintiff fails to allege a plausible Equal Protection claim. The Equal Protection claim was dismissed at the screening stage and will not be addressed in this report and recommendation.

3

dates which makes it difficult to determine when specified events occurred or how long specified conditions lasted.

### A. Fourteenth Amendment Claims

### (1). Allegations

It is also impossible to ascertain from the Amended Complaint the dates of Plaintiff's incarceration in the UCJ. While Plaintiff alleges that "[f]or the biggest part of [his] pre-trial detention, he was held in very harsh conditions . . . at (UCJ)," he also says that he pled guilty to federal charges on January 27, 2020. (ECF No. 19. at 9).[5] Unfortunately, the dates on which particular incidents occurred is important because the standards applicable to procedural due process claims brought by pretrial detainees and convicted inmates differ significantly.[6]

With respect to CTC, Plaintiff alleges it is a private corporation that "operates and maintains the phone systems and kiosk" at the UCJ. (ECF No. 19 at 10). During the periods of time when he was held in a windowless cell, he says that Captain Mitcham working in "conjunction" with CTC "did prevent the Plaintiff from access all communication. This was done without any due process to or due to fault or actions of the Plaintiff." *Id.* at 15.[7] Plaintiff indicates he did not have access to the kiosk or phone. *Id.* He further asserts that the kiosk is the only

---

[5] Plaintiff indicates he has filed another civil rights action against most of these same defendants, *Guirlando v. Mitcham,* Case No. 1:20-cv-01007. Plaintiff is represented by counsel in that suit. Plaintiff alleges the events outlined in this suit are "a different set of facts" although some allegations are "overlapping" which was "unpreventable." (ECF No. 19 at 10). The case was dismissed on October 18, 2021, when summary judgment was granted the Defendants and is currently on appeal. CTC was not a named party to that lawsuit.

[6] Claims of pretrial detainees fall under *Bell v. Wolfish,* 441 U.S. 520, 535 (1979) in which the Supreme Court held that the Fourteenth Amendment's Due Process Clause prohibits holding pretrial detainees in conditions that amount to punishment. Whereas claims of convicted inmates are analyzed under *Sandin v. Conner,* 515 U.S. 472, 484 (1995), which requires a showing that the particular condition at issue amounts to an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."

[7] Plaintiff maintains these same actions were taken in retaliation for him having filed a civil action. His retaliation claim will be addressed in a separate section.

available means of communicating with loved ones or submitting grievances and/or medical requests. *Id.*; *see also Id.* at 19 (denied him access to the phone, the kiosk, and the law library).

Further, Plaintiff alleges that on or about March 1, 2020, and throughout his stay at UCJ, there were numerous occasions on which "he was deprived of his purchases commissary and the money was not returned even thou he did not receive his commissary or sign for his commissary." (ECF No. 19 at 16). On approximately March 4, 2020, Plaintiff alleges the UCJ and CTC deprived him of "communication through the paid for tablet including all the apps, movies and music he had purchased." (ECF No. 19 at 15).

**(2). Procedural Due Process**

"The Due Process Clause of the Fourteenth Amendment provides that '[n]o state shall . . . deprive any person of life, liberty, or property, without due process of law.'" *Walters v. Wolf*, 660 F.3d 307, 311 (8th Cir. 2011)(*quoting* U.S. Const. Amend. XIV, § 1). "Procedural due process imposes constraints on governmental decisions which deprive individuals of liberty or property interests within the meaning of the Due Process Clause of the . . . Fourteenth Amendment." *Matthews v. Eldridge*, 424 U.S. 319, 332 (1976)(cleaned up).

The Court views Plaintiff's claims of being completely cut-off from use of the phone system, the kiosk, and from being unable to use his purchased tablet or any purchased material on it, differently than a straightforward deprivation of property case in which all that is necessary is an adequate post-deprivation remedy. *Zinermon v. Burch*, 494 U.S. 113, 128 (1990)(availability of an adequate post-deprivation remedy will suffice in erroneous deprivation of property cases). When deciding whether an individual should be afforded procedural due process, the Court employs a two-step analysis. *See Kentucky Dep't. of Corr. v. Thompson,* 490 U.S. 454, 460 (1989). First, the Court must determine whether the individual holds a protected liberty or property

interest. *Id.* If a protected interest exists, "[a] procedural due process claims focuses not on the merits of the deprivation, but on whether the State circumscribed the deprivation with constitutionally adequate procedures." *Parrish v. Mallinger,* 133 F.3d 612, 615 (8th Cir. 1998). In determining what process is due, the *Parrish* Court listed a number of relevant factors including "the affected private interest, the risk of an erroneous deprivation, the probable value of additional procedural safeguards, and the government's interest, including burdens that additional safeguards would entail." *Parrish*, 133 F.3d at 615.

First, CTC argues that Plaintiff's claims fail at step one of the due process analyses as he has no protected interest in telephone use. CTC overstates the law in this regard. It is true that inmates do not have the right to unfettered use of a telephone, to particular telephone systems, or to particular rates for telephone usage. *See e.g., Johnson v. State of California,* 207 F.3d 650, 656 (9th Cir. 2000)(prisoners not entitled to a specific rate for their telephone calls although at some point the rate charged could be "so exorbitant as to deprive prisoner of phone access altogether"); *Benzel v. Grammar,* 869 F.2d 1105, 1108 (8th Cir. 1989)(no right to unfettered phone access). However, "in some instances prison inmates may have a right to use the telephone for communication with relatives and friends," which right is subject to reasonable restrictions. *Benzel,* 869 F.2d at 1108; *see also Tucker v. Randall,* 948 F.2d 388, 391 (7th Cir. 1991)(unreasonable restrictions on prisoner's telephone access may violate the First and/or Fourteenth Amendment). CTC fails to address Plaintiff's allegations with respect to his claimed complete loss of access to the kiosk, his tablet, and its content.

Second, CTC argues that Plaintiff "makes no challenge to the manner he was allegedly denied these interests; he only states that he was denied them." (ECF No. 44). The Court

6

disagrees. Manner in general refers to the way in which a thing is done or happens.[8] More particularly, in the context of this case it refers to a lack of notice and opportunity to be heard. Plaintiff contends he was improperly denied access to the phone, the kiosk, his tablet, and its content on numerous occasions without proper procedures and due to no fault of his own; plainly this challenge encompasses the manner in which the deprivation occurred. *See e.g.,* (ECF No. 19 at 15).

Third, CTC maintains it "has no control over" Plaintiff's access to the systems it operates and maintains and the tablets and associated content it sells. (ECF No. 44 at 4-5). However, as set forth above, Plaintiff has alleged that CTC owns and operates the phone system and kiosk, sells inmates tablets and content such as music and movies, and works in conjunction with the UCJ officials in shutting off access to the same. CTC's argument is based solely on the Plaintiff's use of the words "owns and operates" and ignores Plaintiff's other allegations. The use of these terms does not establish that CTC has no control over the process. The issue of whether CTC has any control over or discretion in terminating access to these items is presumably covered by the provisions of the contract between Union County and CTC. Discovery is necessary on this issue.

Finally, CTC argues that Plaintiff "fails to state facts sufficient to weigh the three balancing factors in his favor." (ECF No. 44 at 5). In this regard, CTC argues that the risk of "erroneous deprivation is low since CTC, according to the complaint, only operates and maintains the kiosk. It does not decide or weigh in on who will be deprived of kiosk access." *Id.* Further, it contends that requiring it to screen every kiosk-access decision would impose substantial administrative and financial burdens on it. The Court cannot properly weigh the three balancing factors at this stage of the litigation. The facts are simply not developed enough. Further, as noted above, the Court

---

[8] Oxford Dictionaries (2021). https://premium.oxforddictionaries.com/definition/english/manner (accessed January 5, 2022).

believes Plaintiff has adequately alleged CTC is affirmatively involved in depriving him of access to the various devices.

The Court concludes, as it did at the screening stage, that Plaintiff has stated a plausible procedural due process claim. CTC's Motion for Judgment on the Pleadings for failure to state a cause of action should be denied as to this claim.

### (3). Substantive Due Process

To establish a substantive due process claim the misconduct alleged to have occurred must both violate a fundamental right and "shock the conscience." *Schmidt v. Des Moines Pub. Schs.,* 655 F.3d 811, 816 (8th Cir. 2011). A right is fundamental when it is "deeply rooted in this Nation's history and traditions, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed." *Washington v. Glucksberg,* 521 U.S. 702, 721 (1997)(cleaned up). With respect to the second determination, "the threshold question is whether the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *County of Sacramento v. Lewis,* 523 U.S. 833, 847 n.8 (1998). The conscience-shocking level is generally reached when the conduct is "intended to injure in some way unjustifiable by any government interest." *Chavez v. Martinez,* 538 U.S. 760, 775 (2003

At the screening stage, the Court did not read the Amended Complaint to be asserting a substantive due process claim. However, now in response to the Motion to Dismiss, Plaintiff asserts that he spent 25% of his time without access to the medical department due to CTC's "failure to turn back on the access to the kiosk and tablet." (ECF No. 52 at 8). He maintains he can prove this by obtaining computer records during discovery. Clearly, Plaintiff has a right to

adequate medical care which right is protected by the Fourteenth and Eighth Amendments.[9] However, his right to access this medical care via an electronic kiosk does not constitute a fundamental right. Further, Plaintiff indicates he spoke directly with the nurse and doctor and asked for paper sick call request forms when he was unable to access the kiosk. (ECF No. 19 at 12).

Even if we assume CTC's conduct in denying him access to the kiosk for significant periods of time violated a fundamental right, it does not shock the conscience. Plaintiff clearly had other means of requesting medical care that were not blocked by any action of CTC. No plausible substantive due process claim has been stated. To the extent a substantive due process claim has been asserted in the Amended Complaint, CTC's Motion for Judgment on the Pleadings should be granted as to this claim.

**(4). Qualified Immunity**

CTC next argues it is entitled to qualified immunity on this claim. CTC recognizes that as a private entity it must first be determined whether it is entitled to assert qualified immunity under § 1983. (ECF No. 44 at 10). CTC compares itself to a shopkeeper who at common law also engaged in public service when he stepped "behind a window in his shop to don his postman's hat." *Filarksy v. Delia,* 566 U.S. 377, 385 (2012)(cleaned up). Specifically, CTC argues it "doffs its private activities and steps behind the jailhouse bars to service inmates housed in the Union County Jail with a modern telecommunications system." (ECF No. 44 at 10).

However, CTC fails to discuss the impact, if any, of *Davis v. Buchanan Cnty., Mo.,* 11 F.4th 604 (8th Cir. 2021), *petition for cert. docketed*, *Munger et al v. Davis, et al.,* ___ U.S. ____ (Nov. 24, 2021), in which the Eighth Circuit held that contract medical care providers at a detention

---

[9] CTC is not a named Defendant on the denial of medical care claim.

facility were not entitled to qualified immunity. *Id.* at 622. The Eighth Circuit, discussing the Supreme Court opinions in *Richardson v. McKnight,* 521 U.S. 399 (1997) and *Filarsky*, noted the availability of qualified immunity to state actors depended on application of two-factors: (1) the historical availability of immunity; and (2) the weight of the policy reasons for affording protection from suit under § 1983 *Davis,* 11 F.4th at 617. The three policy considerations are "avoiding unwarranted timidity in performance of public duties, ensuring that talented candidates are not deterred from public service, and preventing harmful distractions from carrying out the work of government that can often accompany damages suits." *Id.* at 620 (cleaned up). The Eighth Circuit concluded that "[b]ecause this court has found no firmly rooted history of immunity, and the purposes of qualified immunity, on balance, do not favor extending immunity, these medical defendants, as employees of large firms systematically organized to perform a major administrative task for profit, are not entitled to assert the defense of qualified immunity." *Id.* at 622.

The question is not as easily resolved as suggested by CTC. To properly analyze whether CTC is entitled to qualified immunity the Court needs more information about the relationship between it and Union County. The Court must consider such matters as whether there is any ongoing or direct supervision by the UCJ staff; whether CTC has any authority to terminate access other than by direct order of command staff; whether CTC is required to carry insurance, etc. This information is not available to the Court in conjunction with this Motion for Judgment on the Pleadings. The Court must leave the issue of whether CTC is entitled to qualified immunity to a later stage in this litigation. CTC's Motion for Judgment on the Pleadings as to this claim should be denied.

### B. First Amendment Retaliation Claim

**(1). Allegations**

Intermingled throughout the Amended Complaint are Plaintiff's factual allegations concerning retaliatory actions taken by Captain Mitcham and Sheriff Roberts in coordination with CTC to deny him access to the telephone, kiosk, and his tablet. *See e.g.,* (ECF No. 19 at 15). Plaintiff says that Captain Mitcham on or about April 14th, April 21st, August 7th, and August 22nd, moved him to a windowless cell in retaliation for the exercise of his constitutional rights. *Id.* Then, in conjunction with CTC, Plaintiff maintains they violated his rights when on each of these occasions they denied him the "privileges of the Kiosk." *Id.* Specifically, Plaintiff alleges that CTC cut him off "from access [to] all communication" including communication with his loved-ones and the means to file grievances and sick-call requests. *Id.* Plaintiff asserts this was in "retaliation for an ongoing civil suit." *Id.*

**(2). Plausibility of the Claim**

"The filing of a prison grievance . . . is protected First Amendment activity." *Lewis v. Jacks*, 486 F.3d 1025, 1029 (8th Cir. 2007). Filing a civil rights lawsuit is also an activity protected by the First Amendment. *Tyler v. Univ. of Ark. Bd. of Trs.*, 628 F.3d 980, 986 (8th Cir. 2011). Generally, "[c]onduct that retaliates against the exercise of a constitutionally protected right is actionable, even if the conduct would have been proper if motivated by a different reason." *Cody v. Weber,* 256 F.3d 764, 771 (8th Cir. 2001). There is no independent injury requirement when retaliatory conduct is involved. *Dixon v. Brown,* 38 F.3d 379, 380 (8th Cir. 1994).

To prevail on his retaliation claim, Plaintiff must demonstrate "(1) he engaged in a protected activity, (2) CTC took adverse action against him that would chill a person of ordinary firmness from continuing in the activity, and (3) the adverse action was motivated at least in part

by the exercise of the protected activity." *Spencer v. Jackson Cnty.*, 738 F.3d 907, 911 (8th Cir. 2013) (cleaned up). "This is an objective test: [t]he question is not whether the plaintiff [him]self was deterred, though how plaintiff acted might be evidence of what a reasonable person would have done." *Scheffler v. Molin*, 743 F.3d 619, 621 (8th Cir. 2014).

CTC's motion to dismiss is premised on the third element. CTC contends Plaintiff claim fails because no retaliatory motive has been alleged. CTC maintains the "ongoing civil lawsuit" mentioned by Plaintiff cannot serve as a retaliatory motive because CTC is not a party to that lawsuit. (ECF No. 44 at 7). In opposition, Plaintiff argues CTC is a party to the ongoing suit in this Court and refers the Court to *Guirlando v. Norwood, et al.,* 1:21-cv-001015 ("*Norwood*") which was opened on March 25, 2021,[10] in the Western District of Louisiana and transferred to this Court by Order entered on March 31, 2021. (ECF No. 52 at 6). The *Norwood* case was opened in this district on April 1, 2021. CTC is a named party.

CTC argues the *Norwood* case cannot be the civil action referred to in the Amended Complaint filed in this case. It maintains the dates identified the Amended Complaint as occurring in April and August "must have been in 2020.[11]" (ECF No. 55 at 3). CTC notes the surrounding dates were in 2020 and the events could not have occurred in 2021 based on the March filing date of the *Norwood* case. However, as previously noted by the Court, it cannot determine from the Amended Complaint the dates of Plaintiff's incarceration in the UCJ. The Court is not free to assume the April and August dates were in 2020 as CTC suggests. Plaintiff has indicated that as of April 30, 2020, because he was "detained for a very sufficient period of time he ha[d] an enormous load of property, most of it legal work." (ECF No. 19 at 14). Plaintiff estimated his personal property bundle to have weighed over fifty pounds.

---

[10] The Complaint was dated March 20, 2021. (ECF No. 1 at 25; 1:21-cv-01015).
[11] Plaintiff was initially indicted in February of 2019. *See supra* n. 3.

Plaintiff has asserted a plausible retaliation claim against CTC. The Court further notes it reads the Amended Complaint as also asserting the retaliatory actions were taken in response to his having filed grievances—also a protected activity.

CTC also contends it is entitled to qualified immunity on this claim. However, the issue of qualified immunity was addressed above and will not be repeated here. CTC's Motion for Judgment on the Pleadings on this claim should be denied.

### C. State Law Negligence Claim

**(1). Allegations**

Plaintiff alleges that the UCJ Defendants failed "to use such care that is reasonable and prudent and careful under similar circumstances with prisoners. The act[s] by named Defendants include a broad range of failure that was the moving force behind the constitutional violation of his rights." (ECF No. 19 at 21).

**(2). Plausibility of the Claim**

CTC maintains the negligence claim fails for a number of reasons. Its foremost argument is that it was explicitly excluded from the negligence claim by Plaintiff. In this regard, it relies on the sentence of the Amended Complaint following the language quoted above;

> The act by all named Defendants minus (CTC) and its representatives include but not limited to failure to act, failure to protect, failure to supervise/train and intentional infliction of emotional distress as well as depriving him of his funds by sell[ing] him apps and music then taking it away without due process, as well as charging him for commissary [items] that he never received.

(ECF No. 19 at 21). Despite the words "minus (CTC)" in the above sentence, the Court cannot agree that Plaintiff has asserted no negligence claim against CTC. Plaintiff specifically refers to actions attributed to CTC throughout the Amended Complaint including selling him a tablet, apps,

and music and then taking them away as well as charging him for commissary items he never received.

"Under Arkansas law, in order to prevail on a claim of negligence, the plaintiff must prove that the defendant owed a duty to the plaintiff, that the defendant breached that duty, and that the breach was the proximate cause of plaintiff's injuries." *Woodruff v. Western Sizzlin of Russellville, Inc.,* 606 S.W.3d 607, 609 (Ark. App. 2020). The determination of the duty of care owed is one of law. *Id.*

CTC first argues that it had no duty to Plaintiff. (ECF No. 44 at 8). It argues it had no relationship with the Plaintiff; instead, it states it merely operated and maintained the telephone system and kiosk; it did not run the detention center; and had no duty to oversee the inmates. *Id.* Even if some relationship exists, CTC asserts that "[i]t does not determine which inmates' access to the kiosk should be restricted." *Id.* CTC contends any relationship "extends only to the use of the telephone system and kiosk because CTC is not alleged to have any oversight or control of Guirlando's legal mail, tablet, or law-library access." *Id.* at 9.

"Duty is a concept that arises out of the recognition that the relationship between individuals may impose on one a legal obligation for the other." *Hadder v. Heritage Hill Manor, Inc.,* 495 S.W.3d 628, 633 (Ark. App. 2016). Clearly, there was some type of a relationship between the Plaintiff and CTC. Plaintiff has alleged that CTC not only provided access to the telephone system, kiosk, and commissary but also sold him the tablet, apps, and music. In turn, Plaintiff has alleged that CTC, working with UCJ personnel, repeatedly cut-off Plaintiff's access to these systems and products.

CTC's argument that no relationship or duty exists is premised on information not presently available to the Court. Without access to the terms of the contract or information regarding how

the system was in fact operated, the Court cannot determine what duty, if any, was owed to the Plaintiff. CTC's conclusory statements do not, and cannot, establish that it owed no duty to Plaintiff.

Next, CTC argues its alleged acts of restricting Plaintiff's access were not the proximate cause of his injuries. (ECF No. 44 at 9). CTC points out that Plaintiff has alleged that it worked in coordination with, or in conjunction with, UCJ officials. *Id.* In view of this, CTC contends "the proximate cause of Guirlando's alleged injuries is the prison officials' decision to restrict his access. CTC functioned only as an avenue for the prison officials' allegedly negligent acts and is therefore not the proximate cause of Guirlando's alleged injuries." *Id.*

"Proximate cause is defined as that which in a natural and continuous sequence, unbroken by any efficient intervening cause, produces the injury, and without which the result would not have occurred." *TMG Cattle Co., Inc. v. Parker Commercial Spraying, LLC.,* 540 S.W.3d 754, 757 (Ark. App. 2018)(cleaned up). Circumstantial evidence may be used to show proximate cause "and such evidence is sufficient . . . if the facts proved are of such a nature and are so connected and related to each other that the conclusion therefrom may be fairly inferred. Proximate causation is usually an issue for the jury to decide." *Id.*

The Court cannot determine whether proximate cause exists on the basis of a motion for judgment on the pleadings. Plaintiff has asserted a plausible negligence claim against CTC and the Motion for Judgment on the Pleadings should be denied as to this claim.

**(3). Statutory Immunity**

CTC's final argument is that it is immune from liability under Arkansas Code Annotated § 19-10-305. (ECF No. 44 at 14). CTC points out that the scope of statutory immunity under this

section is even broader than qualified immunity as it requires allegations that it (1) acted with malicious intent and (2) acted outside the scope of its employment.  (ECF No. 44 at 14-15).

CTC erroneously relies on § 19-10-305 which applies only to officers and employees of the State of Arkansas.  The statutory immunity provision applicable here is found in Arkansas Code Annotated § 21-9-301(a) "all counties, municipal corporations, school districts, public charter schools, special improvement districts, and all other political subdivisions of the state" are granted immunity "from liability and from suit for damages except to the extent that they may be covered by liability insurance."  This immunity applies to agents and employees of the political subdivisions when they are sued in their official capacities.  *City of Caddo Valley v. George,* 9 S.W.3d 481, 484 (Ark. 2000).  It contains no requirement that the Plaintiff allege malicious intent or that the defendant acted outside the scope of its employment.  While the immunity does not apply to civil rights claims under federal legislation and intentional or malicious acts or omissions, *Doe v. Baum*, 72 S.W. 3d 476 (Ark. 2002), it clearly applies to negligence claims.  *City of Caddo Valley,* 9 S.W.3d at 485 ("to the extent of the city's liability coverage, they are not immune from suit and may be found liable for negligence").  The issue of whether CTC has liability insurance that would cover any negligent acts is one that will be determined during discovery.

**D.  Nature of a Motion for Judgment on the Pleadings**

As noted above, the Court applies the same standard on a motion for judgment on the pleadings as it would on a Rule 12(b)(6) motion for failure to state a claim.  *Westcott v. City of Omaha,* 901 F.2d 1486, 1488 (8th Cir. 1990).  In considering such a motion the Court should view all facts pleaded by the nonmoving party as true and grant all reasonable inferences in favor of that party. *Poehl v. Countrywide Home Loans, Inc.*, 528 F.3d 1093, 1096 (8th Cir. 2008).  Here CTC asks the Court to consider the truthfulness of or weigh the facts, either alleged in the Amended

Complaint or as assumed by CTC in the instant Motion. This is not the standard, the Court should not consider or weigh the facts alleged at this stage of the proceeding other than to take the facts alleged in the Amended Complaint as true and determine whether a viable claim has been made. To do otherwise would convert this Motion for Judgment on the Pleadings to a motion for summary judgment.

## IV.  CONCLUSION

For the reasons stated above, I recommend the Motion for Judgment on the Pleadings (ECF No. 43-converted from a Motion to Dismiss) should be **GRANTED IN PART and DENIED IN PART.** Specifically, the Motion should be:

1. Denied as to the Fourteenth Amendment Procedural Due Process claim;

2. Granted as to the Fourteenth Amendment Substantive Due Process claim;

3. Denied for lack of a sufficient record on CTC's claim it is entitled to qualified immunity;

4. Denied as to the First Amendment Retaliation claim;

5. Denied as to the Negligence claim; and

6. Denied as to CTC's claim for statutory immunity under Arkansas law.

**The parties have fourteen (14) days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger *de novo* review by the district court.**

**IT IS SO ORDERED** this 14th day of January 2022.

/s/ *Barry A. Bryant*
_____
HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE